May it please the court, your honors, I'm here on behalf of Jeanette Hendrex and her company, Recessibility Inc. They are the appellants of a summary judgment that was entered by the magistrate judge on the issue of coverage under a professional liability insurance policy. We contend that there are several critical errors made by the court in consideration of that summary judgment that require reversal. The first error is that the court did not apply the correct 8 corners analysis. Instead of looking to the facts that were alleged in the petition and the amended petition, the court created a factual summary of what it believed the causes of action were and based its ruling on the causes of action which is clearly contrary to Texas law. Additionally the court wholly failed to analyze the amended petition. There's one sentence in its original summary judgment opinion that states that the facts in the amended petition are the same as those that were alleged in the original petition, but they're not. And that's a critical error because the law is clear in Texas, and this is a diversity case so we're talking about Texas law, that usually the court is required to examine the last amended petition unless there is a question about whether or not the duty arose under the first petition as well, in which case both petitions are supposed to be analyzed. Another critical error is that the magistrate judge wholly failed to conduct a summary judgment analysis, not an 8 corners analysis, but a summary judgment analysis concerning the appellant's extra contractual claims in which they were claiming independent injuries resulting from the insurer's duty to defend. Their Burgess and the Manchaca case out of Texas, Burgess v. Allstate, and the Manchaca case, Manchaca is a Texas 2018 Supreme Court case, and this court and Leidas, Winnerton, Builders all recognize that if an independent injury is alleged, those third party claims can survive even if there's not a duty to defend and there's not a right to recover under the contract. There's absolutely no analysis in the court's summary judgment opinion, no summary judgment analysis, basically there's a statement that there was no duty to defend so they cannot recover on their extra contractual claims. Tell me the cases again that you say mean that you can still recover for an extra contractual claim against an insurance company even if the insurance company doesn't have a duty to defend. The original one, I believe, is Manchaca, which was a 2018 case out of the Texas Supreme Court, 545 SW 2nd 479. A more recent Austin Court of Appeals opinion goes into a more detailed analysis of that. It's Burgess v. Allstate, 641 SW 3rd 474, that's a 2021 case. I just wanted to ask the other side about that. And this court had one case too if you'd like that one. It's Leidas, Winnerton, Builders and it's 903 F 3rd 435. Back to the duty to defend original, which is sort of the first issue. Now this is a The problem here is that there was allegedly improper solicitation of clients, right? That is how the district court characterized it. The original petition alleged four causes of action. One was for breach of contract and that is where the improper solicitation is mentioned. But if you look at the facts of the original petition, which is what the court was required to do, nowhere in the facts of the petition does the plaintiff, the underlying plaintiff, the third party plaintiff, Scoggins Therapies, allege solicitation. In fact, the only allegation in the facts of the petition is that Ms. Hendricks must have contacted her clients or they wouldn't have otherwise discontinued services with Scoggins Therapies. There's not even an allegation that she asked them to follow her or anything else. That's the factual allegations and the detailed factual allegations are set forth in both our original brief and our reply brief at paragraph nine. I have paragraph by paragraph quoted from the underlying third party petition. I can read that, but what part of the insurance contract do you say created the duty to defend them in light of the factual allegations? Both the coverage provision and... Yeah, which one specifically? Okay, the coverage provided for actual rendition of services, which is what the district court focused on, but it also said including utilization review and case management reviewer or a clinical evaluator. It went through a whole litany of additional things that were included in professional services. Okay, well explain to me how the factual allegations in the complaint triggered that part of the insurance contract. I haven't heard anything yet with respect to the things that you just said. Okay, the complaint was... In the complaint itself, it referred to the CLAS program, that the services were rendered under the CLAS program. The CLAS program is a highly regulated governmental program, which has its own set of regulations on what its service providers are required to do. Also, the contract itself was attached to the complaint and to the amended complaint. The contract itself has a qualification about solicitation that was inserted at my client's insistence to avoid violating the CLAS program regulations. In that exception, in the contract, which is part of the complaint, it says that she's not prevented from providing services if contacted by the clients. Okay, so there's nothing... Every fact you talk about sounds like an alleged improper solicitation. I know you would say that there was no such thing, but it all sounds like you took my clients away, you did something you shouldn't have done, and my clients came over to you. Right? Isn't that what's going on here? And so, if that's the factual allegations, no matter whatever you want to call the claim, if those are the factual allegations, then under the eight corners rule, I have to look at the insurance and see the insurance contract and say, did the insurer agree to cover this kind of thing? So, why did the insurer agree to cover this kind of thing? Where would I look in the insurance policy and it would say, oh yeah, I agreed to insure the therapist or whoever against this kind of thing? I don't believe, honestly, the factual allegations, if you examine the factual allegations separate apart from the causes of action, amount to solicitation. Okay, what do they amount to then? They basically say that she contacted the clients, which she had to do, she was their therapist, and that the plaintiff, Scoggins, believes that if she hadn't contacted the clients, that the clients wouldn't have followed her. That's basically all it says. And it also, and I pointed out, I think, in my briefing as well, it's not only intentional contact that's alleged. If you read the actual tortious interference allegation in the petitions, it has an alternative for negligent tortious interference in the language of the actual petition because it first says that she intentionally contacted and wrongfully solicited the clients and it says, alternatively, she contacted the clients and as a result of that contact, they followed her. Well, as I understood it, the issue turned on whether the lawsuit alleged something that fell within the definition of a professional incident under the insurance policy. The insurer says, look, I will insure you for professional allegations that something bad happened in a professional incident, right? I'll insure you for that. And the district court said, well, no, none of these allegations actually allege a professional incident. They allege something different. So what's your response to that? My response to that is the district court said that none of these amount to a professional incident because it is not the actual rendition of therapy services. That's in the court's analysis. Neither the definition of professional incident nor the definition of coverage limit coverage to the actual rendition of professional services. It includes other related administrative services in the definition of professional incident including case management services and including serving as part of a committee or a clinical evaluator. Okay, so that doesn't apply here. This isn't about serving as a committee. It does because the regulations, which are laws, not extrinsic evidence, but the regulations required her and required Recessibility, Inc. to participate in this review process to notify clients. And that's all, again, once again, that's all the petition alleges is that she somehow contacted her clients. There's no allegation that she solicited the clients. But she was required to do that under the regulations that govern the CLAS program. And I think I have extensively briefed why she was required to participate in the case management review process, which is necessary for continuation of services. If a provider is no longer available through their current DSA, which is what happened here, and she's no longer going to be able to, they reconvene the entire service provider team, including the therapist, including the DSA, all of those people, to make sure that there's a continuation of services to these old clients who rely on their therapist for multiple types of therapy. And the whole program is designed that the client gets to choose its providers, and that the providers are required and trained that they are supposed to cooperate in these review panels if there's an interruption in service to make sure that there's a seamless crossover to a new therapist. Contacting her client, a reasonable interpretation is that she was doing what she was supposed to do under the CLAS services regulations. And again, the eight corners rule in Texas requires a liberal interpretation and any reasonable interpretation that would facilitate coverage. I think the court did the opposite here. The court looked for reasons not to use the definition of coverage and the first half of the definition of professional incident, and then assigned a meaning to professional services from a case with a different definition of professional services. So it should have been starting with the language of the contract, which specifically included something other than the actual rendition of therapy services. If a therapist is sued for violating HIPAA, would that fall within the insurance contract? Again, I think you're required to look at the facts. I think that the reason the amended petition dropped the HIPAA claim is it was ludicrous, but I know that's not relevant to a... I was just asking whether the insurer agreed to defend against HIPAA violations. If a client, the person who owns the HIPAA claim, had sued for violation of HIPAA, no, I don't think it would have been covered. It might have been covered under the personal injury section, and I think there's a section in my brief where I talk about that specifically covers violation of a person's right to privacy, and I think a violation of HIPAA is a violation of a person's right to privacy. It's a statutorily protected violation of a person's right to privacy, and then I think you have to go down the line and get into the analysis of whether the exception applies. And so I guess my answer is it might cover it under that section if a client who owned a HIPAA claim brought that claim. If your client was acting in the best interest of the patient, which is what I hear you arguing, to what extent would there be an obligation to involve a provider like Scoggins Therapies who was providing the service prior to the facts arising in this case? I mean, wouldn't they be part of that whole formula of providing therapy services? If I think I understand your question, but... So Ms. Hendricks is the therapist, and there is a set of obligations for the therapist. Ms. Hendricks was hired by Scoggins because Scoggins isn't a therapist. Okay. So she couldn't provide the same services without hiring another therapist. So if Ms. Hendricks stops contracting with Scoggins, Scoggins either has to hire another therapist, go back and get all the paperwork redone so that that new therapist will be paid by the services, or the client can say, I want to continue with Ms. Hendricks, and I want to follow Ms. Hendricks to whatever other service provider she goes to. And I also want to point out one other fact that I think... You've got to re-write. Why don't you complete your thought? Okay. You need to still have your rebuttal time. That Recessibility, Inc. is a separate insured under the policy. And if the policy definition of coverage was limited to the actual rendition of services, Recessibility, Inc., there would be no reason to cover it. It is an entity. Only the therapist can actually render services. All right. Thank you. As mentioned, you've reserved your rebuttal time. Yes. Thank you. All right. We'll hear from Ms. Hanna. Good morning. Good morning. May it please the court, I'm Katherine Hanna. I'm here representing Philadelphia Indemnity Insurance Company. And certainly Hendricks and Recessibility in Philadelphia agree on one thing, and that is we are bound by an eight corners analysis. I believe that Hendricks has misconstrued both the four corners of the policy, as well as the four corners of the pleadings. As Judge Duncan pointed out, this is a professional liability policy. We're not talking about a broad general liability. It's a professional liability policy. It provides coverage because of a professional incident. And the professional incident must result from the practice of the profession shown in the declarations, which is recreational therapist. There is an inclusion of services performed, basically a list of peer review type services. That does not include what Ms. Hendricks was doing, allegedly doing, in the pleadings. The personal injury coverage, which counsel brought up towards the end of the argument, also requires that the personal injury result from a professional incident. So we're bound by the definition of professional incident, which is a negligent actual or alleged negligent act, error, or omission in the actual rendering of professional services. Professional services is not defined in the policy, but there are a myriad of cases defining professional services. The Sussman and Godfrey case, which is discussed in our brief, makes it clear that a service is not professional simply because it is performed by a professional. And it is not a professional service simply because it is in a highly regulated profession. Sussman and Godfrey obviously dealt with attorneys, and it was an attorney solicitation letter that was at issue. That was considered not to be a professional service. It was not typified by the special training and knowledge required of a professional. We've also discussed the Gregg and Volbey case, which is actually a little bit closer to our case. The lawyers in that case were accused of a scheme of kickbacks, which I will confess I don't quite understand how it worked, but in the mortgage papers, they were title insurance people who helped do mortgage closings. They were accused of kickbacks. It was fees and solicitation. The court in that case said, this is not a professional service. As Judge Duncan pointed out, that is exactly what Ms. Hendricks and her company, Recessibility, were accused of in the pleading. And in fact, what counsel said, the complaint says she contacted the clients, and the clients followed her. That is an allegation that she improperly solicited the clients. The allegation is she improperly used the protected confidential medical information. And I would say, Your Honor, in answer to your question about HIPAA, that would not be a professional service. Every member of my office, paralegals, clerks, receptionists, are required to follow attorney-client privilege. That doesn't mean that they are performing professional services, let's say, if they were accused of violating that attorney-client privilege. And the same is true here. All the members of a medical office are required to follow HIPAA. An allegation that HIPAA was breached is not an allegation of a violation of professional service. And then I want to talk about the case management aspect. Because the case management aspect, and again, we come back to the Scalia and Garner book again this morning. But the case management, when you look at, I'm going to say it right, Estudium Generis, you've got services performed as a member of a credition. Meaning they list a bunch of stuff, and they probably exclude other stuff. They list a bunch of stuff. One of the things they list is a case management reviewer or clinical evaluator. This is peer review. If I manage my case, that does not make me a case management reviewer. Ms. Hendricks and Recessibility were not sued for case management review. So that does not apply in this case. I want to talk a little bit, your honors, about Abit Covey-Monroe. So, recent Texas Supreme Court case, as you know, that formally recognized for the first time in Texas an exception to the eight corners rule. And Hendricks argues that, well, Monroe means, and the district court should have looked to Monroe, to look at these provisions of this class program. And that's simply not applicable here. Monroe required, just as prior to Monroe, and again, I think I'm probably telling you something you already know, the Texas courts generally sort of followed what we call the Northfield exception, which was a case from the Fifth Circuit that made an eerie guess as to what Texas courts might look to outside the eight corners. And then Monroe expanded it a bit and said, we formally, in some cases, we look outside to the eight corners. The most fundamental requirement of Monroe, there has to be a gap in the pleadings that make it impossible to determine whether coverage exists. There's no gap here. The pleadings are clear as to what Ms. Hendricks and Recessibility were accused of. They were accused of using confidential information to solicit clients of Scoggins Therapies and tortiously interfere with the Scoggins Therapy contract. So, you don't get to Monroe because of the gap. The other reason you don't get to Monroe is the arguments of the class program, they overlap with liability. So, the Northfield exception had the concept of you can only have an exception for fundamental coverage facts. The Texas Supreme Court expanded that a bit in Monroe, but they still said it cannot overlap with liability. So, when counsel for Hendricks argues what she did was justified, we should look at the class program to show that what she did was justified. She had to communicate with her clients. That is a defense to liability. So, that clearly overlaps with liability. So, Monroe doesn't apply. And I would submit, even if it did apply, it doesn't help her case. Because again, yes, professionals follow regulations. That doesn't change the allegations against her. The allegations against her, the improper solicitation of clients tortiously interfering with contracts. And what we didn't deal with, but the district court did, is this also implicates the willful and intentional acts exclusion of the policy. There is simply nothing in the petition that is characterized and I'm a little confused. I looked as counsel was arguing at the original petition. I don't see an alternative negligence allegation. Perhaps it's in the second amended, which by the way, there's no evidence in the record that that was provided to Philadelphia. But it still does not include covered facts. There's not an allegation that any of this was accidental, which is what you would need. This is intentional. It's specifically pled as intentional acts. She communicated with the clients and the clients then followed her to the detriment of Scoggins. So, both of those exclusions apply here. On the extra contractual claims, the Menchaca case did talk about when can a plaintiff collect bad faith damages if there's no coverage. And it was not a departure from Texas law. Basically said, if you're not entitled to policy benefits, there may be a situation where you have suffered independent injury even though there was no coverage. That situation is so rare, Texas courts continually say, we have never seen it. The Menchaca court relied on Stoker, and I apologize, I don't have the side of the Stoker case in front of me. And Stoker specifically said, this is so rare, we have never seen it. And the reason it's so rare is because you can't, to be an independent injury according to Menchaca, it cannot flow from the denial of benefits. So an argument that I had to defend myself because you didn't defend me, I mean again, that depends on coverage, but it's also not an independent injury because policy benefits are defense costs. I was emotionally distressed because you didn't defend me or you didn't return my calls. That is not an independent injury. That flows from the relationship and the claim that I was entitled to a defense and didn't get it. So I think that counsel has misconstrued independent injury. The Burgess case out of the Austin Court of Appeals that was mentioned, that is an uninsured, underinsured motorist case where the Austin Court of Appeals recognized that there's a possibility of bad faith, liability in the UMUIM context. You do not want me to bore you going into the intricacies of those arguments. But suffice it to say, that plaintiff was entitled to policy benefits. That plaintiff was entitled to recover UMUIM coverage. So that doesn't apply here where, as the district court correctly held, Hendricks and Recessibility were not entitled to benefits. In addition, in the brief, Hendricks misconstrues the Lamar Holmes case to say that this is a first party case. It's not a first party case. This is a case of a third party suing Hendricks and Recessibility. That's a third party case. And then the question here is, did the carrier have a duty to defend? So that's a third party case. What Lamar Holmes said, the Texas Prompt Payment Penalty Statute, which specifically applies to first party claims, that applies to defense costs in third party claims. So if the district court or if this panel held that Philadelphia improperly denied a defense, then obviously the defense costs would have been paid late. They'd be applied because that part of the claim is first party. And that may be going too far down a rabbit hole. But suffice it to say, in this case, as in most cases, especially in the third party context, if there is no coverage, there is no extra contractual liability. The district court was correct in that regard. And I believe I've covered all of the points in my brief. I certainly am ready, willing, and able to entertain the panel's questions should you have any. We never quarrel when counsel give us time back. I will yield the remainder of my time. All right. Thank you. All right. We'll hear back from you, Ms. Bain. Can you hear me? Yes, ma'am. All right. Once again, I think that Philadelphia's counsel committed the same error that the court committed. And I'm going to read to you the definition of professional incident. It's the identical language as contained in the definition of coverage under the policy. Professional incident means any actual or alleged negligent act, error, or omission in the actual rendering of professional services to others in your capacity as an insurer, including professional services performed as a member of a credentialing group or utilization review panel, as a case management reviewer, or a clinical evaluator, or as a member of a board or a committee of a hospital or professional society where similar services are performed by you. The word peer review is nowhere in the policy. And if you read the regulations that I cited in my brief and provided in the addendum, the panel that reconvenes, which includes the therapist and the STI whenever it is required for services to be changed, is specifically referred to as case management. And again, in the context of an eight corners review, the court is required to adopt the interpretation that favors coverage if it's reasonable in any way. And even if the court believes that a different interpretation is more reasonable, they are required, when you're considering the duty to defend, to adopt the interpretation that favors coverage. And Justice Duncan, in response to your question, the policy doesn't have any follow-up by exclusions to that definition. It ends there. It includes these services, but it doesn't say, but does not include this, that, and the other. It does not say that. And there's just nothing in the policy that limits any type of cause of action that is covered. And I will also state that we don't agree that this case is necessarily covered by an eight corners analysis. I do believe the court erred in its eight corners analysis. But we have argued extensively in our brief that Monroe does apply because this is exactly the type of case where looking to the regulations, looking to the affidavits of the other class providers, solves the issue of coverage was this professional services. Participating in statutorily, or I should say regulation mandated processes, that were regulated the exact type of services that were covered by the contract, which was attached to the petition, is an exercise that determines coverage because it makes it clear that this is a case that should be decided under Carnes, not under Sussman-Godfrey. Sussman-Godfrey was presented in a different context. It had a definition of professional services. Our contract does not. And the definition of professional services in the Sussman-Godfrey case was a definition in an exception. So in Sussman-Godfrey, it said the definition of what was covered at Sussman-Godfrey. The exception applied because it wasn't covered in the professional services. And I respectfully disagree that the word contacting, a statement in a case that says a therapist has contacted their clients, is not the same as a statement that the therapist has solicited their clients. First of all, a therapist necessarily has to have contact with their clients. The petition doesn't say whether she went back after her services were terminated or whether she simply told them in her last therapy session, I'm no longer going to be providing your services through STI. You need to contact your DSA to get a new service. That had to be done no matter what, to get a new service provider, because the paperwork has to be done so that the government will pay for the services. So you can interpret the statement in both petitions that she contacted her client, it doesn't say when, it doesn't say what was said, it doesn't say she solicited them. The only place the word solicited is used is in the tortious interference cause of action. And again, the court was supposed to look at the facts as pled, not the causes of action or a characterization of the causes of action. And I think that's what happened here. Thank you, Your Honor. All right. Thank you, Counsel. We'll send a briefing in the case. The case will be submitted.